**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| In re:  Malcolm Shawn Phinney, Sr., and<br>       Cynthia Phinney<br>              Debtors | Case No. 04-34202-DOT<br>Chapter 7 |
| Keith L. Phillips, Chapter 7 Trustee,<br>              Plaintiff,<br>v.<br>Darnell Whitaker, Walkwood<br>Properties, Inc., Darrell Underwood,<br>and Walt Dominion Properties, LLC,<br>              Defendants | Adv. Pro. No. 07-03137-DOT |

**MEMORANDUM OPINION AND ORDER**

In this adversary proceeding. the plaintiff chapter 7 trustee seeks to set aside a postpetition transfer of residential real property from debtors to a third party pursuant to Bankruptcy Code §§ 548 or 549. Trial on the complaint was held on July 29, 2008. At the conclusion of trial the court requested the parties to submit proposed findings of fact and conclusions of law and continued hearing for closing argument. On September 16, 2008, the court heard argument of counsel, following which the court ruled from the bench that judgment would be entered for defendants and the complaint dismissed.

This opinion supplements the court's previous oral ruling.

**Findings of Fact.**

Debtors filed a chapter 13 case on April 28, 2004. On December 9, 2004, the court approved a consent order modifying the automatic stay entered into between debtors and Washington Mutual Bank, the holder of a first deed of trust on their primary

residence located at 616 Robcurn Drive, Henrico County, Virginia. This real property was held in the name of debtor Malcolm Shawn Phinney only.

Debtors' chapter 13 plan was confirmed on January 18, 2005. After confirmation, debtors failed to comply with the terms of their consent agreement modifying the automatic stay, and Washington Mutual issued a deed of trust notice of sale for February 21, 2005, and later for April 26, 2006.

Several days before the scheduled April foreclosure sale date, an employee of defendant Walkwood Properties, Inc., forwarded to the debtors a flyer advertising Walkwood Properties' services that might save the real property from foreclosure. Defendant Darrell Underwood, president of Walkwood Properties, Inc., visited with Mrs. Phinney to discuss the pending foreclosure. He told her that he could find a purchaser for the Robcurn Drive property who would negotiate with Washington Mutual.

Underwood and Walkwood Properties have arranged many transactions similar to that proposed to the debtors, in which property owners under threat of foreclosure enter into sale and leaseback agreements with right of repurchase.

Underwood put debtors in touch with defendant Darnell Whitaker. On April 25, 2006, Whitaker and debtor Malcolm Phinney entered into a real estate purchase contract under which Phinney conveyed the property to Whitaker by deed dated April 25, 2006, and recorded May 8, 2006. On April 26, 2006, Whitaker caused the pending Washington Mutual foreclosure on the Robcurn Drive property to be cancelled in exchange for his payment of $19,119.56 to Washington Mutual. Under their agreement with Whitaker, debtors remained in their former property and were granted a year's lease at a rental of $1,650.00 per month. Whitaker also granted debtors an option to repurchase the property

for $205,000.00. The option expired April 30, 2007, approximately a year from the date that debtor Malcolm Shawn Phinney sold the property to Whitaker.

On May 25, 2006, Whitaker paid Washington Mutual the sum of $157,298.50, the balance owing on debtors' deed of trust account. Whitaker borrowed the payoff amount from Bank of America, with his loan secured by a deed of trust on the Robcurn Drive property. A closing statement prepared in connection with Whitaker's agreement with debtors and his subsequent refinancing of the property reveals that Walkwood Properties received a payment of $10,183.30 for its participation in the Whitaker purchase. (P. Ex. 15, Tr. 141.)

At the time of these transactions, no notice of the debtors' bankruptcy filing had been filed in the relevant real estate records of Henrico County, Virginia.

Debtors' case was converted to chapter 7 on September 12, 2006. Keith Phillips was appointed trustee. After the case was converted, debtors had trouble paying the rent on the Robcurn Drive property when Mrs. Phinney's workman's compensation benefits expired, and in January 2007, Whitaker evicted them from the property. In February 2007, Whitaker transferred the property to his entity, defendant Walt Dominion Properties, LLC, for no consideration.

### The Adversary Proceeding.

The trustee filed this adversary proceeding on October 9, 2007. In five counts, he asserts the following: 1) the debtors' property transfer to Whitaker (and subsequently to defendant Walt Dominion) was a fraudulent conveyance voidable under § 548; 2) the transfer was an unauthorized postpetition transfer of estate property voidable under §§ 549 and 550; 3) the estate has a claim for actual damages because defendants

3

Whitaker, Underwood, and Walkwood Properties intended to defraud debtors and their creditors out of the equity in the subject realty 4) the transfer should be held void on the ground of unconscionability; and 5) the estate has a claim for punitive damages against Whitaker, Underwood and Walkwood Properties in the amount of $100,000.00.

## Discussion and Conclusions of Law.

The court first addresses the liability of defendants Underwood and Walkwood Properties. Plaintiff has argued that in effect Underwood and Whitaker joined together to defraud debtors. Although Underwood brought debtors and Whitaker together , it has not been shown that Underwood was otherwise involved in the negotiation of the purchase agreement. He was paid a fee of $10,183.30 and acquired no interest in debtors' property. Whatever the outcome against Whitaker, Underwood and Walkwood Properties acquired no interest in debtors' property. They did not defraud debtors or persuade them to enter into an unconscionable contract with Whitaker. Accordingly, the complaint will be dismissed as to these defendants. However, the analysis applied in the discussion of the liability of defendants Whitaker and Walt Dominion Properties is equally applicable to Underwood and Walkwood Properties.

The court next addresses the last three counts of the complaint. There is no evidence in the trial record that the individual defendants made any false or misleading statements to debtors in connection with the property transfer to Whitaker. The court is satisfied that in transferring the property debtors understood what they were doing and the consequences of their actions. Although there is conflicting testimony, the court accepts the statements of Underwood and Whitaker that debtors did not tell them they

4

were debtors in a pending bankruptcy case.[1] In fact, Mr. Phinney signed an affidavit at the time of settlement on the transfer that he was not in bankruptcy, and the title examination did not reveal any record of debtors' bankruptcy case. (Tr. 98.) It follows from these conclusions that there is no basis for the court to find plaintiff has proven Whitaker or Underwood intended to defraud debtors.[2] The same is true as to Walkwood Properties. Accordingly, Count III will be dismissed as to all defendants.

The trustee has failed to carry the heavy burden of proving unconscionability against any defendant. While the actions of the defendants were likely motivated by a desire to make a profit at debtors' expense, those actions do not shock the conscience, and the bargain is not one which "no man in his senses…would make," which is what Virginia courts require to establish unconscionability. *See Derby v. Derby*, 8 Va. App. 19, 378 S.E.2d 74 (1989). Accordingly, Count IV will be dismissed as to all defendants as well.

Counts III and IV having been dismissed, there remains no basis upon which punitive damages may be awarded, and therefore Count V will be dismissed as to all defendants.

---

[1] Plaintiff's counsel on redirect examination of Mrs. Phinney asked her if she had told the man who came to her home on the initial contact whether she was in a chapter 13 case, and she replied that she had. (Tr. 45.) Without attributing any bad faith to Mrs. Phinney, the court is unwilling to accept this statement. Not only is there the directly contrary testimony of Whitaker and Underwood, but throughout her testimony Mrs. Phinney exhibited difficulty recalling facts she was questioned about. She mistakenly testified that it was Whitaker who came to her home for the initial meeting. Most significantly, early in her testimony when plaintiff's counsel asked Mrs. Phinney to describe the transactions proposed to her during the initial visit, she stated that she could not "remember that far" and that she was "on serious medications, so my brain is not right now." (Tr. 18-19.)

[2] In his proposed findings and conclusions submitted September 8, 2008 (docket 76 at 17), plaintiff acknowledges that he has not proven fraud.

The remaining issues are whether plaintiff may recover against Whitaker or Walt Dominion Properties, LLC, under either Code §§ 548 or 549.

Section 548 is inapplicable here because it covers only transfers made to the period prior to the filing of the bankruptcy.[3] Accordingly, Count I will be dismissed as to all defendants.

Section 549 applies to postpetition transfers, providing that

**a)** Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--
  **(1)** that occurs after the commencement of the case; and
  **(2)(A)** that is authorized only under section 303(f) or 542(c) of this title; or
    **(B)** that is not authorized under this title or by the court.
**(b)** … n/a
**(c)** The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

**(d)** An action or proceeding under this section may not be commenced after the earlier of--
  **(1)** two years after the date of the transfer sought to be avoided; or
  **(2)** the time the case is closed or dismissed.

---

[3] Section 548(a)(1) of the Bankruptcy Code provides that the trustee may avoid certain transfers "of an interest of the debtor in property" if those transfers were "made or incurred on or within 2 years *before* the date of the filing of the bankruptcy petition." (emphasis added). However, even if § 548 were applicable to the transactions at issue in this case, the end result would be the same. Due to the similarity of the issues raised in §§ 548 and 549, the same analysis used in the § 549 discussion applies in the § 548 discussion, mandating the same result.

The first issue in applying § 549 is to determine whether there was a transfer of property of the estate. Defendants argue that there was no transfer of estate property because debtors were in chapter 13 with a confirmed plan when they made the transfer, and § 1327 provides that upon confirmation of the plan, property of the estate vests in the debtor. Does that necessarily mean that a confirmation order causes there to be no more property of a bankruptcy estate? The court follows the rationale of Judge Mayer in *Montclair Property Owners Ass'n v. Reynard (In re Reynard)*, 250 B.R. 241 (Bankr. E.D. Va. 2000), in which he found that upon plan confirmation, the estate continues to exist. While arising in a different context, *Reynard's* logic nonetheless applies here.

The question here and in *Reynard* is how to reconcile § 1306 of the Bankruptcy Code with § 1327. Section 1306 provides that property of the estate includes "all property…that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted…," 11 U.S.C. § 1306(a)(1), and that "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b). Section 1327(b), on the other hand, provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."  Judge Mayer summarized the problem this way:

> The [issue] arises from the definition of property of a chapter 13 estate, § 541 as modified by § 1306(a), and the effect of confirmation of a chapter 13 plan, § 1327(b). Section 541 establishes the extent of a bankruptcy estate. It is measured, with some exceptions, as of the filing of the petition….In a chapter 7 case, debts as of that date are, unless otherwise provided, discharged. In return, the debtor surrenders to the trustee all of his non-exempt property as of the same date. In a liquidation proceeding under chapter 7, this works well; however, chapter 13 is intended as a financial reorganization. In order to have assets available to fund the reorganization, a

> modification to § 541 is necessary. Section 1306 accomplishes this. It provides:
>
>> (a) Property of the estate includes, in addition to the property specified in section 541 of this title-
>> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first; and
>> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.
>> (b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.
>
> While this seems fairly straight forward, its impact is clouded by § 1327(b). Section 1327 states:
>
>> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
>
> On the one hand, § 1306(a) seems to include in the chapter 13 estate all property acquired by a debtor after confirmation, including future earnings. On the other hand, § 1327(b) seems to revest all property of the estate in the debtor, resulting in an estate without assets. The resolution of these competing provisions is not academic. If there is no post-confirmation chapter 13 estate, § 542 would have no effect in a chapter 13 case. Section 542 requires the turnover to the trustee of property of the estate. A trustee would not be able to use, sell or lease property under § 363. Section 363 is limited to property of the estate. Sections 362(a)(2), (3) and (4) would have no effect because there would be no property of the estate. If there is an estate and post-confirmation earnings are protected by the automatic stay, post-petition creditors may be prejudiced; if there is no estate or post-confirmation earnings are not protected by the automatic stay, pre-petition creditors may be prejudiced.

250 B.R. at 245-46.

In resolving the issue, Judge Mayer utilized two canons of statutory construction. First, he noted that the Bankruptcy Code must be read as a whole. Second, he noted that when two statutory provisions are in conflict, the court should endeavor to find an

8

interpretation that will not render either provision meaningless or superfluous. *Id*. at 246. He then concluded that "[t]he only manner in which the two provisions can be read in harmony is if the assets of the chapter 13 estate as of the date of the confirmation of the chapter 13 plan vest in the debtor, [and] the estate continues...." *Id*.[4]

The court agrees with Judge Mayer's interpretation and therefore finds that in this case there was a transfer of property of the estate by debtors to Whitaker. However, that is not the only issue that must be decided in evaluating § 549. The other requirements of the statute must also be addressed. Subsection (a) of § 549 makes the statute applicable to unauthorized transactions. There has been no allegation or evidence that the transfer at issue was authorized by the court or by the Bankruptcy Code, especially in light of the provision of the debtors' chapter 13 plan prohibiting transfers of real estate without a court order.

Subsection (c) of § 549, an exception to the trustee's avoidance powers, is the real heart of this inquiry. This subsection prohibits recovery of property from a good faith purchaser without notice who acquired the property for present fair equivalent value, unless there was notice of the bankruptcy filed in the real estate records. There is no evidence of such a notice here, so the issue becomes limited to whether the amount paid by Whitaker for the property constituted "present fair equivalent value" under § 549(c).

In determining whether the amount paid constituted fair equivalent value, the trial record presents several possibilities. The Henrico County real estate tax assessment of the property was $193,700.00. Debtor Mr. Phinney testified that the value was $200,000.00-

---

[4] See *U.S. v. Harchar*, 371 B.R. 254 (N.D. Ohio 2007), for a summary of the varying approaches taken by courts in resolving the conflict between §§ 1327 and 1306.

9

$210,000.00. A Bank of America Home Value Search valued it between $224,00.00 and $236,000.00. Defendant Underwood testified that he advised debtors the value was $236,000.00. The court finds that the value of the real estate at the time of transfer was between $224,000.00 and $230,000.00.

The value paid by Whitaker was $157,298.50, the payoff amount of the Washington Mutual obligation, combined with the $19,119.56 paid to cause the foreclosure sale to be cancelled. That totals $176,418.06.

The trustee argues that these figures do not represent fair equivalent value. Defendants argue that the trustee bears the burden of proof to establish that debtors received less than reasonably equivalent value, citing *C & M Investments, LLC v. Jones (In re Jones),* 209 B.R. 380 (Bankr. E.D. Va. 1997). However, that case was decided under the fraudulent conveyance provisions of § 548 of the Bankruptcy Code. In that section, receipt of less than reasonably equivalent value constitutes an element of the fraudulent conveyance itself and thus must be proven by the party seeking to set aside the conveyance, who in *Jones* were the debtors. In this case, the burden is on the trustee to establish that the transfer falls under § 549(a)'s general prohibition of postpetition transfers. Fed. R. Bankr. P. 6001.

The weight of authority indicates that the burden is upon a party seeking to establish an exception to the rule of § 549(a). Here, defendants seek to show that the exception of § 549(c) applies, so the burden is on them. *See Ford v. Loftin (In re Ford)*, 296 B.R. 537, 556 (Bankr. N.D. Ga. 2003); *In re Shah*, 2001 WL 423024, at *7 (Bankr. E.D. Pa. April 10, 2001).

The next question is whether defendants have carried the burden of proving fair equivalent value. *Jones*, cited above, is a case decided under the fraudulent conveyance provisions of § 548 of the Bankruptcy Code. As such, it is not binding in this instance. However, the court in *Jones*, found that "debtor effectively received approximately 87 percent of the value of his property. Thus, in what the court considers an arm's length transaction, the debtor received a high percentage of his property's value and under less than ideal circumstances where he was confronted with foreclosure and loss of the property." *Id*. at 386. *Jones* held that the debtor had not proven receipt of less than reasonably equivalent value. *Id*.

Defendants cite *Cooper v. GGGR Investments*, *LLC*, 334 B.R. 179 (E.D. Va. 2005), in which a debtor sold his home valued at $260,000.00 for the amount of $150,032.32. Debtor had also been given an option to repurchase the home for $178,000.00. The district court valued the option at $82,000.00, the difference between the value of the property and the amount required by the option to repurchase. It then added the amount advanced by the lender to stop the foreclosure. The court compared this figure with the amount of equity originally in the property. The ratio was 78%, which the court found to be sufficient for a bankruptcy court to find reasonably equivalent value.

Applying the *Cooper* test in the present case,

> 1. using the $224,000.00 to $230,000.00 value and the $157,298.50 payoff amount plus the $19,119.56 amount advanced to stop foreclosure, debtors' equity in the real estate was between $47,581.94 and $53,581.94.

11

> 2. using the $224,000.00 to $230,000.00 value and the $205,000.00 option amount, the value of the option was $19,000.00 to $25,00.00 Adding that to the $19,119.56 paid to stop the foreclosure establishes between $38,119.56 and $44,119.56 as the amount debtors actually received as equity under the deal they entered into with defendants.
>
> 3. the percentage of equity debtors received as opposed to their equity had no deal been done is between $38,119.56/$47,581.94 and $44,119.56/$53,581.94 or between 80.1 percent and 82.3 percent.

The court is cognizant that this formula gives some value to the right to repurchase and that this right is rarely exercised in cases such as this. Giving no consideration to the value of the repurchase option, the ratio could be recalculated by comparing the $176,418.06 advanced by defendants to the $224,000.00 to $230,00.00 value of the real estate. The result is an equity ratio between 78.8 and 76.7 percent.

The court is also cognizant that sales by trustees in bankruptcy rarely result in 100% recovery of the value of the property. In light of the facts in this case, including the value of the property, the percentage recovery, and the range of the comparative return of equity (between a low of 78.8 % to 76.7% and a high of 80.1% to 82.3%), the court is persuaded that the defendants have satisfied the requirements of § 549(c). Therefore the trustee may not avoid the transfer because Whitaker paid present fair equivalent value for debtors' property. Accordingly, Count II will be dismissed as to all defendants.

In accordance with the above and for reasons stated by the court from the bench on September 16, 2008, it is

ORDERED that judgment is entered for the defendants, and the complaint is dismissed.

Signed_____

        /s/ Douglas O. Tice Jr.
Chief Judge
United States Bankruptcy Court
Eastern District of Virginia

Copies to:

Augustus C. Epps, Jr.
Christian & Barton, L.L.P.
909 E. Main St., Suite 1200
Richmond, VA 23219-3095

*Attorney for Trustee*


Keith L. Phillips
311 South Boulevard
Richmond, VA 23220

*Trustee*


Darnell Whitaker
9305 Owl Trace Court
Chesterfield, VA 23838

*Defendant*


Walkwood Properties, Inc.
c/o Darrell Underwood, Pres.
12631 Second Branch Road
Chesterfield, VA 23838

*Defendant*


Darrell Underwood
4130 Squire Hill Ct. #7
Richmond, VA 23234

*Defendant*

Walt Dominion Properties, LLC
c/o Darnell Whitaker, R/A
3108 Parham Road
Suite 400
Richmond, VA 23294

*Defendant*

William C. Parkinson, Jr.
Wm. C. Parkinson, Jr., P.C.
5310 Markel Road, Suite 200
Richmond, VA 23230

*Attorney for Defendants Darnell Whitaker and Walt Dominion Properties, LLC*

Jon Edward Thornbrugh
Thornbrugh Law Firm
10303 Memory Lane, Suite 102C

Chesterfield, VA 23832

*Attorney for Defendants Darrell Underwood and Walkwood Properties, Inc.*